Folmer Ice Cream Company and Continental National American Group, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Helen M. Busbey, Appellees.

Argued December 3, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Leo E. Gribbin, Jr.,* with him *Stetler & Bribbin,* for appellant.

*Wilson H. Oldhouser,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER, January 14, 1975:

On November 8, 1967, Helen M. Busbey (Busbey), while in the course of her employment with Folmer Ice Cream Company (Folmer), sustained an accidental injury to her back. On February 6, 1968, Busbey and Folmer executed a compensation agreement, the terms of which provided that Busbey was to be paid her medical expenses and the sum of $52.50 each week from November 17, 1967, during an indefinite period, for disability resulting from the accidental injury of November 8, 1967.

Folmer filed a termination petition on August 22, 1969. An answer was filed by Busbey and, following a hearing before a referee, the petition was dismissed. Folmer appealed this dismissal but subsequently withdrew the appeal and continued payments under the provisions of the compensation agreement. On March 22, 1973, Folmer filed a second termination petition which was also dismissed following a hearing before a referee. Folmer once more appealed to the Workmen's Compensation

Appeal Board (Board) which affirmed the referee's determination and dismissed Folmer's appeal. This appeal followed and we affirm.

Since Folmer initiated proceedings to terminate compensation payments being made to Busbey under a compensation agreement, the burden of proof is upon Folmer to show that Busbey is no longer entitled to such payments. Where, as here, the decision of the Board is against the party having the burden of proof, the question on appellate review is whether the findings of the Board are consistent with each other and with its conclusions of law and its order and can be sustained without a capricious disregard of competent evidence. *Sherred v. Pittsburgh*, 7 Pa. Commonwealth Ct. 401, 299 A. 2d 381 (1973).

Folmer asserts in this appeal that Busbey is not entitled to benefits because of that portion of Section 306 (f) of The Workmen's Compensation Act,[1] *as amended and renumbered*, 77 P.S. §531, which reads as follows:

> "If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

Our examination of the record does not convince us that Busbey either refused reasonable medical services or that any of her injuries or incapacity is due to a refusal to avail herself of reasonable medical services.

Busbey is a woman 43 years of age and weighing approximately 300 pounds. All the medical evidence in this case establishes, without any contradiction, that she has a herniated lumbar disc at L5-S1 and that because of her obese condition it is not feasible to perform back

---

1. Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §1 et seq.

surgery. Folmer arranged to have Busbey examined by Dr. Ivan L. Butler who concluded the following:

"However, because of the patient's marked severe obesity, I feel that the risk of an elective surgical procedure from a medical and pulmonary standpoint far outweight the benefits that would be gained. . . . I feel that the only approach at this time would be to consider institutionalization for an absolutely controlled weight reduction program. With this patient, I feel this probably would take as long as 6-8 months to accomplish. If at that time the patient's weight is between 180-200 pounds, consideration should be given to a lumbar myelogram and planned surgery, depending upon this. The way her present weight is, I feel surgery is very strongly contraindicated."

Following Dr. Butler's evaluation and upon Folmer's urging, Busbey submitted to institutionalization and an absolutely controlled weight reduction program. She entered the Rehabilitation Hospital for Special Services at Mechanicsburg on December 4, 1972 and was placed under the care of Dr. M. Evans Brown. Her weight at the time of her admission was 300 pounds.

Dr. Brown ordered 150-calorie meals with a daily total of 450 calories. On the second day at the hospital, she was seen by Dr. Brown's medical consultant who put her on a no-calorie diet which consisted of broth and no-calorie soft drinks.

After seven days on this liquid no-calorie diet, she weighed 286 pounds. Eight more days of this restricted diet resulted in a further weight reduction to 279 pounds. However, at this point a reversal occurred, and on the eighteenth day of her hospital stay she weighed 283¾ pounds. Dr. Brown explained this reversal by stating that "[f]rom the 20th to the 22nd I would say it occasionally happens that a person doesn't necessarily keep losing weight continually and, of course, just to be humane we did give her a Christmas pass."

Busbey was allowed home for *one day* to spend Christmas with her family, and this resulted in a further weight reversal since she weighed 289 pounds on her return to the hospital. Two days later, on December 27, she called her husband, who consulted Dr. George Thomassy, their family physician, and she signed herself out of the hospital without Dr. Brown's permission. Dr. Thomassy testified, in response to a question concerning his opinion as to whether or not Mrs. Busbey could have remained at the Rehabilitation Hospital beyond December 27 without serious threat to her physical or mental well-being, that he believed she would probably have suffered a nervous breakdown.

We think it significant that Dr. Brown testified that Busbey was cooperative while in the hospital relative to the weight reduction program. Likewise, Dr. Francine Camitta, who recommended in July 1972 that Busbey restrict her daily calorie intake to 1000 calories per day, testified that at all times in the course of her treatment she was cooperative and that Busbey did not resist any suggestions directed to achieving weight loss. While under Dr. Camitta's care, Busbey's weight decreased only from 298¾ pounds on July 19, 1972 to 297¼ pounds on September 20, 1972. This discouraging progress, coupled with Dr. Butler's evaluation and Folmer's urging, undoubtedly influenced Busbey to enter the hospital on December 4, 1972.

The Board concluded that "[i]n this case claimant did not refuse the weight reducing procedures of the employer. She pursued them and obviously they failed. . . . This is a case where claimant did not refuse treatment, but where the treatment did not achieve the desired results." We cannot agree that the Board, in reaching this conclusion, capriciously disregarded competent evidence. Nor can we ascertain that the Board's findings are not consistent with each other and with its legal conclusion. There was no abuse of discretion on the part of

the Board in determining that Busbey had not refused reasonable medical services. *See Bostic v. Dreher,* 206 Pa. Superior Ct. 257, 213 A. 2d 118 (1965) ; *Beener v. North American Machine Co., Inc.,* 204 Pa. Superior Ct. 506, 205 A. 2d 665 (1964).

Further, we agree with the Board that this record does not contain evidence that any activity of Busbey with regard to medical services has increased her incapacity. Busbey is admittedly totally disabled, which disability is related to her back injury. Therefore, we conclude that the *record in this case* is insufficient to allow us to reverse the Board's determination that Busbey did not forfeit her rights to compensation by failing to lose weight.

Accordingly, we enter the following,

### ORDER

AND NOW, this 14th day of January, 1975, the February 21, 1974 order of the Workmen's Compensation Appeal Board dismissing the appeal of Folmer Ice Cream Company is hereby affirmed.