Penntube Plastics Company and Michigan Mutual Insurance Co., Petitioners v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Virginia Dunlap, Respondents.

Argued September 11, 1978, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Roger B. Wood,* with him *David L. Pennington,* and *Harvey, Pennington, Herting & Renneisen, Ltd.,* for petitioners.

*Michael A. Paul,* with him *Richard, Brian, DiSanti & Hamilton,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE WILKINSON, JR., October 12, 1978:

The employer and its insurance carrier (petitioners) appeal an order of the Workmen's Compensation Appeal Board (Board) affirming a decision of the referee in favor of respondent (claimant) pursuant to Section 108(i) of The Pennsylvania Workmen's Compensation Act (Workmen's Compensation Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. §27.1(i). We affirm.

Claimant had been employed by the petitioner, Penntube Plastics Company, for a period of eight years as an inspector of plastic tubing which petitioner manufactures. It is undisputed that claimant suffered contact dermatitis of the hands due to their

exposure to polyethylene, a chemical used in the manufacture of this tubing. She developed a rash and skin eruption on her hands after working with a specific type of tubing after about two months on the job. After she requested a transfer due to the condition of her hands, claimant was sent by her employer in 1971 to a dermatologist who determined that she had an allergic reaction to polyethylene and advised both the claimant and her employer that she should avoid further contact with polyethylene. Claimant was transferred to another department away from the manufacturing process but continued to inspect the plastic tubing and to suffer from dermatitis. Claimant left the petitioner's employment as of March 1, 1974 due to this skin condition.

On August 19, 1974, claimant filed a petition for occupational disease benefits under The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, added by Section 1 of the Act of December 10, 1959, P.L. 1746, *as amended*, 77 P.S. §1208(i). On July 23, 1975, a second claim petition was filed by claimant under the Workmen's Compensation Act. Hearings were held May 8, 1975, July 9, 1975 and May 4, 1976.

At the hearings, claimant testified that from 1966 to 1971 she was treated by her family physician for the skin eruptions on her hands, but that she first learned that she was allergic to polyethylene when she was referred to a dermatologist by her employer in 1971. Claimant testified she sometimes wore gloves at work which alleviated her condition somewhat, but that she was unable to properly inspect the tubing while wearing gloves. Claimant's dermatologist testified that the allergic reaction to polyethylene developed during contact with the raw material of the plastics manufacturing process and that the dermatitis was due to contact with polyethylene. He further

stated that as a result of prolonged contact with this substance permanent damage was caused to the sweat glands in claimant's hands. The petitioner's medical expert testified claimant's dermatitis was caused by an immunological disease, or a predisposition to an allergic reaction.

The referee dismissed the claim petition for an occupational disease on the ground that claimant's exposure to polyethylene had extended beyond June 30, 1973,[1] but awarded workmen's compensation benefits for continuing disability beginning March 1, 1974, and awarded counsel fees. On appeal, the Board deleted that portion of the referee's award of counsel fees to the claimant on the ground that the referee failed to make a finding that there was no reasonable basis for a contest, but affirmed the remaining portions of the award.

On appeal to this Court, petitioners have framed the following question for our review: Is an inflammation of the skin due to polyethylene an occupational disease within the meaning of Section 108(i) of the Workmen's Compensation Act where the inflammation would not have been contracted by the claimant but for the fact that she had an underlying immunological disease or predisposition to an allergic reaction? Section 108(i) provides:

The term 'occupational disease,' as used in this act, shall mean only the following diseases.

. . . .

(i) Infection or inflammation of the skin due to oils, cutting compounds, lubricants, dust, liquids, fumes, gasses, or vapor, in any occupation involving direct contact with, handling thereof, or exposure thereto.

---

[1] See Section 301(c)(2) of the Workmen's Compensation Act, 77 P.S. §411(2).

Petitioners assert that it could not have been the intent of the legislature to compensate for injuries that occur from allergic reactions to chemicals or substances used in the course of employment since the injuries occur only to persons with allergic reactions rather than all workers in that particular occupation. However, it is clear that the legislature has already negatived this assertion through its 1972 amendments to the Workmen's Compensation Act in which a compensable injury (including an occupational disease)[2] is defined as "an injury to an employe, *regardless of his previous physical condition*, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." (Emphasis added.) Section 301 (c)(1) of the Workmen's Compensation Act, 77 P.S. §411(1). The record here clearly establishes that claimant's allergic susceptibility was a physical condition, that exposure to polyethylene caused an inflammation which naturally resulted from this exposure and that continued exposure to the chemical caused an aggravation of the original contact dermatitis.

Accordingly, we will enter the following

ORDER

AND Now, October 12, 1978, the order of the Workmen's Compensation Appeal Board, No. A-72595, dated June 16, 1977, is hereby affirmed, and it is ordered that judgment be entered in favor of Virginia Dunlap and against Penntube Plastics Company and/or Michigan Mutual Insurance Company, in the sum of $75.45 per week, beginning March 1, 1974 and continuing thereafter during continuance of the total disability, together with interest at the rate of 10 per cent per

---

[2] *Id.*

annum, pursuant to the terms of the Workmen's Compensation Act.

Penntube Plastics Company and/or its insurance carrier is also directed to pay medical and hospital expenses if and when the same shall or may accrue.